IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN OTIS BURNSIDE, | ) | |
|     Plaintiff, | ) | Civil Action No. 3:18-cv-191 |
| | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| | ) | Re: Motion for Summary Judgment |
| DR. KIM SWINDELL, et al., | ) | ECF No. 51 |
|     Defendants. | ) | |

## MEMORANDUM OPINION

United States District Judge Susan Paradise Baxter

**Relevant Procedural History**

    This civil action was filed in this Court on September 24, 2018. Plaintiff, formerly an inmate incarcerated at the Federal Correctional Institution at Loretto, originally brought this action against Dr. Kim Swindell and Physician's Assistant Stephanie Hoover, employees at FCI-Loretto. Ms. Hoover has since been dismissed from this action.

    In his complaint, Plaintiff, acting *pro se*[1], alleges that he was denied adequate medical care thereby violating his Eighth Amendment rights against cruel and unusual punishment. Plaintiff seeks to enforce his constitutional rights against Dr. Swindell by way of *Bivens v. Six*

---

[1] Pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (internal citation omitted). Because Mr. Burnside is a pro se litigant, this Court will consider facts and make inferences where it is appropriate.

1

*Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] As relief, Plaintiff seeks monetary damages as well as a neurological expert evaluation and corrective neurological surgery.

Defendant has filed a motion for summary judgment. ECF No. 51. Plaintiff has filed a brief in opposition. ECF No. 63; ECF No. 64. These motions are fully briefed and are ripe for disposition by this Court.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, *quoting* Fed. R. Civ. P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Id*. at 330; *see also Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metro. Life Ins. Co.,* 391 F.3d 497, 502

---

[2] This Court has previously determined that Plaintiff is not pursuing a negligence claim. ECF No. 27. *See also* ECF No. 64, Plaintiff's Opposition Brief, pages 3, 19-20. Accordingly, Defendant's arguments about negligence need not be addressed by this Court.

(3d Cir. 2004). After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324.

**Discussion and Analysis**

Plaintiff raises a single claim of deliberate indifference against Dr. Swindell. According to the complaint, Dr. Swindell refused Plaintiff's requests for medical attention, particularly after his February 23, 2018 fall. ECF No. 1, page 2; ECF No. 1-14. A review of the attachments to the complaint reveals that Plaintiff is complaining about a "severe neurological problem (a C-5, C-6 nerve root lesion) that has never been treated, that is now life-threatening to a near fatal degree because of the severity of Plaintiff's February 23, 2018 fall on the South 2 stairway." ECF No. 1-14, ¶ 3. Plaintiff alleges that when he fell he snapped his neck so badly that he has knocked unconscious and defecated on himself. *Id.* at ¶ 1.

The evidence provided to this Court does not bear out either the general lack of medical attention or Dr. Swindell's involvement in a lack of medical attention during Plaintiff's incarceration at FCI Loretto from December 2017 through September 12, 2018 (the date of Plaintiff signed his complaint). The motion for summary judgment will be granted in favor of Defendant.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when a prison official is deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). To establish a violation of the constitutional right, a claimant must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

3

1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference can be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carrroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Defendant moves for summary judgment on the basis that Plaintiff did not have a serious medical need before his February fall and that Dr. Swindell was not deliberately indifferent to a serious medical need after the February fall. In support of the motion for summary judgment, Defendants have produced Plaintiff's 2017-18 medical records, as well as Declarations from Health Services Administrator Norm Weidlich, Dr. Swindell, and Physician's Assistant Stephanie Hoover. ECF No. 54.

The records reflect that Plaintiff arrived at FCI Loretto in December of 2017. *See* ECF No. 53, Statement of Material Facts, ¶ 3; ECF No. 65, Plaintiff's Response to Defendant's Concise Statement, ¶ 3. Plaintiff was medically evaluated by Dr. Swindell at the Chronic Care Clinic on December 28, 2017. During this visit, Plaintiff reported a "nerve root problem" in his neck and Dr. Swindell reviewed an MRI dated 2009 and a cervical radiograph from 2016. *Id.* at ¶¶ 8-9. Dr. Swindell concluded that no additional neurologic intervention was necessary. *Id.* at ¶ 10. Plaintiff disputes Dr. Swindell's medical conclusions because the doctor has "no knowledge or skill in neuroscience, neurology, or neuropharmacology" but instead is a "pediatric infectious disease specialist." *See* ECF No. 65.

Prison doctors "are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer,* 991 F.2d at 67 (citations omitted). "[M]ere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. *White,* 897 F.2d at 110. Plaintiff is not constitutionally entitled to consultation with a neurologist or any other outside specialist. He was examined by a physician who reviewed his test results and specifically found no need for further neurological intervention. This Court will not second guess the opinion of a medical professional as a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1080 (3d Cir. 1976).[3]

Next, Dr. Swindell argues that he was not deliberately indifferent to any serious medical need arising out of Plaintiff's February fall. "Deliberate indifference is more than malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." *Miller v. Sweeny*, 2017 WL 838805, at * 1 (D. N.J. 2017) *citing Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). The Third Circuit has found deliberate indifference where prison staff: "knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; and (3) prevents a prisoner from receiving needed or recommended treatment." *Butler v. Donate*, 2020 WL 3791570, at *3 (E.D. Pa. Jul. 7, 2020) *quoting Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

---

[3] Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. *Clark v. Doe,* 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). The records reflect that Plaintiff received extensive medical attention related to a history of ulceration on his ankle. Dr Swindell ordered lab testing, vascular ankle-brachial ultrasound and bilateral lower extremity venous ultrasound, and a consult with an outside vascular surgeon. All of these tests and the consultation took place. ECF No. 54-3.

5

Dr. Swindell declares that he did not know about Plaintiff's February fall until over three months after the fact and then was only notified by way of an Inmate Request to Staff from Plaintiff dated June 15, 2018. ECF No. 54-3, page 4. Dr. Swindell claims that he reviewed "the BEMR and found no evidence that Mr. Burnside had previously reported such an injury, staff reporting such an injury, patient following up at Health Services for such an injury, or staff responding urgently or emergently to such an injury at or near the date indicated by Mr. Burnside."[4] *Id.* The medical records support this declaration as they do not contain any reference to Plaintiff's fall.

In opposition, Plaintiff argues that he did report his February fall in a March 1st visit with an eye doctor. Plaintiff declares that his medical records reflect his February fall as his March 1st visit to an optometrist, Dr. James Repko indicates in a note "experiencing floaters [illegible] fell in accident prior." ECF No. 62, page 8. Physician's Assistant Hoover then acknowledged Plaintiff's fall and his injuries therefrom with her signature and her professional stamp dated March 2nd. *Id.* at page 9. Plaintiff swears that Repko and Hoover "both told the Defendant" about injuries and Defendant "acknowledged the entire aforementioned factual basis with the Defendant's signature on 3/5/18." *Id.*

Plaintiff's contention in this regard is not enough to demonstrate Dr. Swindell's knowledge of Plaintiff's February fall. Dr. Repko's report only indicates that Plaintiff fell on some unspecified date in the past.[5] The report does not mention a recent fall and does not note that Plaintiff hit his head, snapped his neck, or was knocked unconscious.

---

[4] In response to the Inmate Request, Dr. Swindell indicated that Plaintiff should attend sick call or follow-up wit his PCP provider if he was still experiencing pain. *Id.* The medical records do not indicate that Plaintiff ever followed up with complaints of pain. *Id.*

[5] There is evidence in the medical record that Plaintiff fell in 1997 and snapped his neck. ECF No. 54-3, page 5.

Because Plaintiff has not demonstrated Dr. Swindell was deliberately indifferent towards his serious medical needs, summary judgment will be granted in favor of Defendant.[6]

An appropriate order follows.

---

[6] The medical records indicate that Plaintiff was examined by Dr. Swindell again on December 10, 2018 at the Chronic Care Clinic. ECF No. 54-3, page 5. At that time, Dr. Swindell referred Plaintiff to a neurologist who saw Plaintiff in May 2019. *Id*.